Hillsborough,
No. 4733.

FERDINAND J. GAGNE & a.

*v.*

JOHN O. MORTON, *Commissioner of Public Works and Highways.*

Argued May 5, 1959.

Decided June 2, 1959.

*Albert Terrien* (by brief and orally), for the plaintiffs.

*Louis C. Wyman*, Attorney General, *Jarlath M. Slattery*, Assistant Attorney General, and *William J. O'Neil* (*Mr. O'Neil* orally), for the defendant.

WHEELER, J.   The plaintiffs allege that the erection of a curbing in front of their property depriving them of access was in violation of RSA 257:8 and was discriminatory and unconstitutional.

RSA ch. 236 authorized the construction of limited access highways designed for through traffic. Section 3 thereof provides, in part, that "No person shall have any right of ingress or egress to, from, or across limited access facilities to or from abutting lands, except at such designated points at which access may be permitted, upon such terms and conditions as may be specified by the commissioner of public works and highways from time to time." See *Kostrelos* v. *Merrill*, 101 N. H. 317. Section 8 of said chapter provides that no commercial enterprise or activities shall be authorized by the Commissioner within or on the property acquired for or designated as a limited access highway.

RSA ch. 257 authorized the location and construction of the Central New Hampshire Turnpike on which plaintiffs' land is located from a point in Nashua to a point in Concord as a limited access highway under RSA ch. 236, but with the proviso that section 8 of said chapter should not apply "to existing facilities on highways, not now restricted as to access, used as toll-free sections of the turnpike." RSA 257:8.

The plaintiffs contend that under RSA 257:8 the Commissioner is compelled to grant access to their roadside stand on the basis that this section specifically exempts existing facilities

from the non-access power of the Commissioner. It is further claimed that other facilities in the same general location were granted access, and that denying access to the plaintiffs' property was discriminatory and an arbitrary act beyond the power of the defendant.

This court, in construing a similar provision in the act creating the Eastern New Hampshire Turnpike (Laws 1953, *c.* 237, *s.* 9, now RSA 256:9) said:

"The broad question of whether established and developed commercial enterprises upon toll-free sections of a limited access highway may in general be treated differently from properties not so developed or established, is one which concerns the public rights and to which answer may properly be given in general terms. The provisions of section 9 of chapter 237, Laws of 1953, are constitutional on their face. Their effect *is to permit, but not require* the continuance of existing commercial enterprises under the conditions specified." (Emphasis supplied). *Opinion of the Justices,* 99 N. H. 505, 507.

The plaintiffs in 1947 established a roadside stand on their property abutting the highway and during the summer months of 1947 and 1948 sold soft drinks and cigarettes and, at times, garden produce. The stand was rented for a two-months period in 1949 and has not been used since, although the plaintiffs have indefinite plans for future development. The extent and nature of the other establishments abutting the highway which were permitted to retain rights of access are not clear upon the evidence. The defendant was not called as a witness. The only testimony in this regard was from the plaintiff, who testified there were " . . . a lot of businesses along that line" and " . . . there were a number of business facilities."

It is fundamental law that all persons have an equal right to acquire and possess property and one cannot be deprived of his property without due process of law. However, vested rights of individuals in the enjoyment of their property must in the public interest sometimes yield to reasonable legislative restrictions.

"While the courts may not condemn police legislation because they regard it as inexpedient or unwise, yet the expediency is to be taken into account, in respect to the importance of the public benefit the legislation seeks to promote, as well as the means it adopts to secure the benefit. Expediency involves utility, and if the legislation is directed to a public interest of minor concern,

while imposing serious restrictions in regulation or bar of guaranteed rights to accomplish the interest, it tends to show its unreasonableness. On the other hand, the more insistent the public need of police measures, the more may private rights be restricted to satisfy the need." *Woolf* v. *Fuller*, 87 N. H. 64, 68, 69.

The public need for limited access highways for through traffic requires little argument. In order to accomplish this purpose, in the interest of safety the rights of access must be held to a minimum. The taking of a right of access is an element of damage for which the plaintiffs are entitled to recover in their pending appeal.

The Commissioner, under RSA 257:1, 8 and 236:3, was permitted but not required to grant continuation of existing facilities. We cannot say on this record that the Commissioner's action in restricting the plaintiffs' access was arbitrary or unreasonable. *Fortin* v. *Morton*, 101 N. H. 477.

*Exceptions overruled.*

All concurred.